UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RANDALL L. WOODRUFF Trustee of the bankruptcy estate of Jacob Key, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:12-cv-00859-TWP-MJD |
| vs. | ) ) | |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S VERIFIED MOTION FOR PROTECTIVE ORDER**
**[DKT. 36]**

This matter came before the Court on a Verified Motion for Protective Order filed by Defendant American Family Mutual Insurance Company [Dkt. 36].  American Family seeks a protective order to prevent the discovery of its claim file, reserve determinations, as well as the depositions of attorneys Brent Threlkeld, Benjamin Stevenson, and Jeff Bick.  Plaintiff, the trustee of Bankruptcy Estate of Jacob Key (herein referred to as the "Estate"), asserts that these documents and deposition testimony are relevant and discoverable.  American Family provided copies of the documents withheld from production for *in camera* review on February 13, 2013.  The motion was heard on February 14, 2013.

I.      **Background**

The parties provide a thorough review of attorney-client privilege law and the work product doctrine, as well as the general discovery law in bad faith claims against an insurance company.  But the procedural posture of this case and the relationship of the parties vis-à-vis the attorney-client privilege and work product doctrine, make the analysis different from a garden variety question of privilege and the cases cited by the parties.

This action results from an underlying lawsuit in Madison County (Indiana) Superior Court that went to trial, a verdict was rendered, and all appeals were exhausted (the "Hamilton Action"). In that action, Dewayne Hamilton alleged that Jacob Key was negligent in waiving John Owens through a line of stopped traffic, which resulted in a vehicle collision between Hamilton and Owens. Key was represented in the underlying lawsuit by Brent Threlkeld and Benjamin Stevenson,[1] who were retained by American Family pursuant to an automobile insurance policy.

During the Hamilton Action, Hamilton made a demand for $100,000, apparently believing this to be the insurance policy limit, on May 20, 2009. On January 27, 2010, the parties attended mediation where Hamilton demanded $250,000, the limits of the available insurance policy. After the court denied Key's motions for summary judgment and for judgment on the evidence, on June 24, 2010, a jury returned a verdict of $990,000 against Key and in favor of Hamilton. The verdict was affirmed by the Indiana Court of Appeals on February 28, 2012.

Key filed for bankruptcy on October 25, 2010. The judgment in favor of Hamilton was included among Key's debts. On February 2, 2011, the bankruptcy court granted a discharge of Key. With approval of the bankruptcy court, the bankruptcy trustee retained Mark Dudley, counsel to plaintiff Hamilton in the Hamilton Action, to serve as the trustee's counsel in this matter.[2]

---

[1] Messrs. Threlkeld and Stevenson were co-counsel, both with the firm Threlkeld & Associates. For convenience, the Court refers to Mr. Threlkeld and Mr. Stevenson, as well as any paralegal with that firm, herein as "Threlkeld."

[2] American Family argues that there "may be ethical considerations" where Mr. Dudley represented both Hamilton in the Hamilton Action and is now representing the trustee for the Estate. [Dkt. 36 at 11.] At the hearing, American Family indicated that it is not seeking to disqualify Mr. Dudley as counsel and thus, no issue with regard to Mr. Dudley's representation of the Estate is properly before the Court. However, the Court is not convinced by American Family's arguments that Mr. Dudley is "representing both sides of the same transaction". [*See id.*] Mr. Dudley represented Hamilton in the Hamilton Action and now represents the Estate for Key against American

On May 25, 2012, the Estate filed a lawsuit in Marion County, Indiana (which was removed to this Court on June 21, 2012), alleging that American Family's "conduct is a breach of its duty of good faith" and that American Family "breached its contract with its insured, Key". [Dkt. 1-1 at ¶¶ 13, 14.]  During discovery, the Estate has requested American Family's claim file as well as depositions of attorneys for Key and American Family employee, Bick.  American Family seeks a protective order to prevent the disclosure of the documents on its Second Amended Privilege Log [Dkt. 43] and the depositions of attorneys Threlkeld, Stevenson, and Bick.  The Estate has provided waivers executed by Jacob Key, Ted Brown, and Sally Brown (the defendants in the Hamilton Action) of "any and all privileges previously held by myself in relation to all insurance claim files, attorney-client communications and all other privileged communications in regard to the claim made by Dewayne Hamilton arising out of a wreck that occurred on August 11, 2008."  [Dkt. 38-1.]

## II.    Discussion

Two protections are at issue with respect to the discovery requested of American Family: the attorney-client privilege and the work-product doctrine.  Federal Rule of Evidence 501 provides that "[i]n a diversity case where state law provides the substantive rule of decision, privileges are determined in accordance with the applicable state law."  *Compton v. Allstate Prop. & Cas. Ins. Co.*, 278 F.R.D. 193, 196-97 (S.D. Ind. 2011); Fed. R. Evid. 501.  In the absence of argument that another state's laws apply, and because the car accident and underlying trial occurred in Indiana, the Court will apply Indiana attorney-client privilege law to the issues presented.  *See Compton*, 278 F.R.D. at 197.

---

Family in an entirely new action.  It would be highly inappropriate for counsel for American Family to suggest an ethical impropriety by opposing counsel where no such impropriety exists.

The work-product doctrine, on the other hand, is governed by federal law – specifically Fed. R. Civ. P. 26(b)(3). Consequently, the court will apply the Federal Rules of Civil Procedure and federal case law to the attorney work-product issues presented.

Before considering the question of privilege, American Family has raised an objection that several of the documents on its Second Amended Privilege Log are "irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence as to any matters raised in this litigation." The Court will first consider whether the requested information is relevant and reasonably calculated to lead to the discovery of admissible evidence relating to a claim or defense in this matter.

### A.    Relevancy

The Federal Rules of Civil Procedure allow for a broad range of discovery. Rule 26(b)(1) provides:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). American Family makes a blanket claim that 79 out of 98 documents on its Second Amended Privilege Log (or 80%) are not relevant to this action. American Family argues these same documents are protected from production by the work-product doctrine because they were created in anticipation of the Hamilton Action. The Court finds this position inconsistent. If the requested documents were created in anticipation of the Hamilton Action,

then they are certainly relevant to this action that challenges American Family's handling of the Hamilton Action.

For example, American Family argues that Documents 9-15, all letters from attorney Threlkeld communicating to Bick and/or Key about the Hamilton Action are "irrelevant, immaterial and not reasonably calculated to lead to the discovery admissible evidence as to any matters raised in this litigation."  [Dkt. 43 at 2-3.]  The Court disagrees that "counsel's opinions and post trial report evaluation" (document 9), "counsel's opinions as to proposed appeal evaluation" (document 10), and "counsel's opinions and analysis of Court of Appeal opinion" (document 14) are irrelevant to this action or unlikely to lead to the discovery of admissible evidence.  These documents go to the heart of the Estate's claim against American Family – that American Family handled the claim in bad faith and in violation of its contract with Key.

In any event, although American Family made a blanket assertion that the documents identified on its privilege log were irrelevant, it failed to explain **why** it claims these documents are not relevant.  American Family's relevance objections are not articulated on a document-by-document basis as required and, as noted above, are clearly meritless with regard to the documents discussed.  The Seventh Circuit has repeatedly held that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)); *see also J.A.D. ex rel. Depp v. Astrue*, No. 1:11-cv-01518-TWP-TAB, 2013 WL 1183146 at *6 (S.D. Ind. Mar. 21, 2013) (citing *Poston v. Astrue,* No, 1:08-cv1543-JMS-LJM, 2010 WL 987734, at *8 (S.D. Ind. Mar. 15, 2010) ("This method of argumentation is not argumentation at all . . . .  The Court cannot and will not forge new arguments for [the Claimant].")); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)

(finding that undeveloped and perfunctory arguments are waived)).   Consequently, the Court finds that American Family has waived its relevancy objections by failing to specify **why** (on a document-by-document basis) the identified documents are not relevant to this matter. Moreover, the Court finds that all of the documents on American Family's Second Amended Privilege Log are relevant to this action and have the potential to lead to the discovery of admissible evidence relevant to a claim or defense in this case.   American Family's relevancy objection is overruled.

### B.      Attorney-Client Privilege

Indiana Code § 34-46-3-1 provides that attorneys shall not be required to testify regarding "confidential communications made to them in the course of their professional business, and as to advice given in such cases."   American Family provides the Court with copious citations to attorney-client privilege law in the context of an insurance company hiring a lawyer to investigate a claim and provide advice to the insurer regarding coverage.   [*See* Dkt. 36 at 8-11; Dkt. 40 at 1-5.]   However, the issue here is not whether American Family's communications with its counsel, hired to provide coverage advice, are protected communications.[3] The issue is whether American Family can use the attorney-client privilege as

---

[3] For example, American Family cites to *Hartford Fin. Servs. Group, Inc. v. Lake County Park & Recreation Board*, 717 N.E.2d 1232, 1236 (Ind. Ct. App. 1999) and *Compton*, 278 F.R.D. at 197, for the proposition that "[t]he attorney-client privilege protects from disclosure communications between a lawyer and an insurance company regarding the company's coverage rights and obligations to its insured."   [Dkt. 36 at 9-10; *see also id.* at 13 (arguing that *Hartford* shows that "an insurance company's retention of legal counsel to interpret the policy, investigate the details surround the damage, and to determine whether the insurance company is bound for all or some of the damage, is a 'classic example of a client seeking legal advice from any attorney.'"); Dkt. 40 at 2-3.] Yet, both of these cases involved an insurance company retaining a lawyer to perform an investigation and provide legal advice regarding whether coverage for the claim existed.  Here, American Family did not deny coverage for Key, but seeks to keep its communications with Key's counsel privileged where Key has waived that privilege.  *See also Howard v. Dravet*, 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004) (cited by American Family for the argument that "[a]n evaluation letter by outside counsel to an insurance company containing legal advice is protected by the attorney-client privilege because it contained confidential communications"; however, in that case a third party, not the insured, was seeking production of the letter).

a shield to prevent the disclosure of communications between American Family and the lawyer retained to defend Key during the Hamilton Action.  The answer is that it cannot.

At the hearing on its motion, American Family took the position that it was the client of Threlkeld during the Hamilton Action.  Jurisdictions are divided on whether the attorney retained by an insurance company to defend the insured have an attorney-client relationship with both the insured **and** the insurance company.  *Compare Nat'l Union Fire Ins. Co. v. Stites Prof. Law Corp.*, 235 Cal. App. 3d 1718, 1727 (Cal. Ct. App. 1991) ("In the usual insurer-attorney-insured relationship, the insurer has a duty to defend the insured and hires counsel to provide the defense. The insurer controls the prosecution of the defense.  So long as the interests of the insurer and the insured coincide, they are both the clients of the defense attorney and the defense attorney's fiduciary duty runs to both the insurer and the insured."); *Shapiro v. Allstate Ins. Co.*, 44 F.R.D. 429, 431 (E.D. Pa. 1968) ("It thus seems clear that, in relation to counsel retained to defend the claim, the insurance company and the policy-holder are in privity.  Counsel represents both, and, at least in the situation where the policy-holder does not have separate representation, there can be no privilege on the part of the company to require the lawyer to withhold information from his other client, the policy-holder."); *Nat'l Union Fire Ins. Co. v. Continental Ill. Group*, Nos. 85-c-7080, 85-c-7081, 1987 WL 4806, at *2 (N.D. Ill. May 1, 1987) ("Courts will in effect impose the party to whom the fiduciary duty is owed on the fiduciary's lawyer (make him a joint-client) in order to protect that party from disadvantage although the fiduciary's lawyer never formally represented him. . . .  In other words, the lawyer for the company also was the lawyer for the insurer by virtue of their fiduciary relationship."), *with Pine Island Farmers Coop v. Erstad & Riemer, P.A.*, 649 N.W.2d 444, 451-52 (Minn. 2002) (holding that defense counsel represents the insurer only where the insured expressly consents after consultation); *Kirschner v. Process*

*Design Assocs., Inc.*, 592 N.W.2d 707, 711 (Mich. 1999) ("[N]o attorney-client relationship exists between an insurance company and the attorney representing the insurance company's insured.").  The Court is unaware of an Indiana precedent on this issue.

It is clear, however, that Threlkeld was the attorney for Key (as well as the other named defendants) as he entered an appearance for them in the Hamilton Action.  It is also clear that American Family paid for the costs associated with Threlkeld's representation of Key.  This does not, however, mean that Threlkeld represented American Family by virtue of his representation of Key and American Family paying those expenses.  Indiana Rule of Professional Conduct 5.4(c) provides that "[a] lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."  Moreover, comment 11 to Rule 1.8 *Conflict of Interest: Current Clients:  Specific Rules* provides as follows:

> Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part.  The third person might be a relative or friend, an indemnitor (such as a liability insurance company) or a co-client (such as a corporation sued along with one or more of its employees).  Because third-party payers frequently have interests that differ from those of the client, including interest in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client.  See also Rule 5.4(c) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).

Although American Family paid for the legal services of Threlkeld provided to Key, Threlkeld still had all the same duties to Key and the Browns as if they were paying for the representation themselves.

If informed consent was provided by Key (and the Browns) allowing Threlkeld to represent American Family or if Indiana were to adopt a policy that found Threlkeld to be the

lawyer for both American Family and Key, the rules governing privileged communications

regarding multiple parties are relevant.   Specifically, Comment 30 to Indiana Rule of

Professional Conduct Rule 1.7 *Conflict of Interest:  Current Clients* provides:

> A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege.  **With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.**

(emphasis added).  As a result, pursuant to the Indiana Rules of Professional Conduct, even if

Threlkeld represented both the insured(s) and the insurer, the attorney-client privilege could not

be used to prevent the disclosure of privileged communications against the now adverse but

formerly commonly-represented parties. *See also Abbott Labs. v. Alpha Therapeutic Corp.*, 200

F.R.D. 401, 407 (N.D. Ill. 2001) ("The communications by either party to the attorney are not

necessarily privileged in a subsequent controversy between the two parties.") (citations omitted);

*Dumas v. State Farm Mut. Auto. Ins. Co.*, 274 A.2d 781, 784 (N.H. 1971) ("Where two parties

are represented by the same attorneys for their mutual benefit, the communications between the

parties are not privileged in later action between such parties or their representatives.") (internal

quotation marks and citations omitted).

Indeed, "a plethora of cases have held that no attorney-client privilege can be asserted

against an insured or an assignee of an insured in its action against an insurance company with

respect to materials prepared as part of the insured's defense in the underlying action."  *Med.

Assurance Co., Inc. v. Weinberger, M.D.*, No. 4:06-cv-117, 2013 WL 501746, at *10 (N.D. Ind.

Feb. 7, 2013) (applying Indiana law) (citing *Glacier Gen. Assurance Co. v. Superior Court*, 95

Cal. App. 3d 836 (Cal. App. Ct. 1979) ("To permit the insurer to use the attorney-client privilege

to shield from its insured, communications which relate to the insurer's decision concerning

settlement would be to place the insured in a secondary rather than a primary position in his relationship with the attorney, seriously eroding the insured's ability to establish that the insurer had failed in its duty to him."); *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 855 (7th Cir. 1974) (finding that the attorney-client privilege did not attach to communication between the insurance company and its attorney as against the assignee of the insured's claims against the insurance company); *Lorenz v. Valley Forge Ins. Co.*, No. Civ. H 82-191, 1984 WL 2234 (N.D. Ind. Nov. 28, 1984), *rev'd on other grounds*, 815 F.2d 1095 (7th Cir. 1987) (asserting the proposition that attorney-client privilege cannot be asserted with respect to materials by insurance-defense counsel appointed to the defense of an insured in action by insured against insurer); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 200, 204 (D.D.C. 1998) (discussing the principle that "when a lawyer represented two persons and they later had a falling out and one sued the other, neither could claim the attorney-client privilege . . . . That principle had also been applied when an insurance company hired an attorney to represent its insureds. When the insured then sued the insurance company, the courts had rebuffed any attempts by the insurance company to claim the attorney-client privilege to prevent its insured access to the documents that the attorney had created when she represented the insured and the insurance company's common interest in defeating the case brought against the insured . . . . [T]he courts had applied this principle when the insured assigned whatever claim she had against the insurance company to the person who sued the insured in the first place."); *Dome Petroleum Ltd. V. Employers Mut. Liab. Ins. Co. of Wisc.*, 131 F.R.D. 63, 68-69 (D.N.J. 1990) (relying on Seventh Circuit's holding in *Simpson* and finding there is no attorney-client privilege by insurer against subrogee of insured)); *see also Barry v. USAA*, 989 P.2d 1172, 1175-76 (Wash. Ct. App. 1999) ("[I]t is a well-established principle in bad faith actions brought by an insured against an insurer under the

terms of an insurance contract that communications between the insurer and the attorney are not privileged with respect to the insured.") (citation omitted); *Silva v. Fire Ins. Exchange*, 112 F.R.D. 699, 699-700 (D. Mont. 1986) ("The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.").

The Northern District of Georgia was faced with a situation similar to that presented to this Court. *Camacho v. Nationwide Mutual Insurance Company*, 287 F.R.D. 688 (N.D. Ga. 2012). In *Camacho*, the insured brought a bad faith failure to settle claim against his insured. The court analyzed:

> Although no Georgia court has yet to expressly hold that the privilege vanishes when the same attorney represents both the insurer and the insured under the joint-defense exception, several courts including in Florida, North Carolina, and Iowa have held **in the context of a claim for third-party bad faith by an insured against her insurer that the protection of attorney-client privilege did not apply**. *See, e.g., Cozort v. State Farm Mutual Auto. Ins. Co.*, 223 F.R.D. 674 (M.D. Fla. 2005) (holding that under Florida law, the entire claim file from an underlying coverage cause of action is discoverable in a subsequent bad faith action because Florida recognizes no privileges or limitation with respect to claim file materials in such an action); *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 617 S.E.2d 40 (N.C. Ct. App. 2005) (concluding that a tripartite attorney-client relationship existed whereby the lawyer hired to defend an insured represented both the insurer and the insured and that the common interest or joint client doctrine applies to the context of insurance litigation such that communications are not privileged as between the insurer and the insured); *Henke v. Iowa Home Mutual Cas. Co.*, 249 Iowa 614, 87 N.EW.2d 920 (Iowa 1958) (holding that communications between an insurer and the attorney employed by the insurer to defend the insured were not privileged because the defense attorney represented both parties).
>
> . . .
>
> The Court finds that the joint defense/common interest doctrine applies here, and **Nationwide cannot claim the protection of the attorney-client privilege over its communications with [defense counsel] regarding the defense of its insured in the underlying action unrelated to the issue of coverage**. Such communications are therefore discoverable in this third-party bad faith action, and Nationwide's objection to the production of documents are being protected by the attorney-client privilege is overruled.

11

*Camacho*, 287 F.R.D. at 692 (emphasis added).   This Court finds the *Camacho* analysis persuasive.  Even assuming American Family was represented by Threlkeld, it cannot claim the protection of the attorney-client privilege over its communications with Threlkeld regarding the defense of Key in the Hamilton Action.

Consequently, the following documents contained on American Family's Second Amended Privilege Log and generated by Threlkeld are not protected from production to Key (or his successor-in-interest, the Estate) pursuant to the attorney-client privilege:  Documents 1-15, 19, 28-30, 32, 34-36, 40-44, 47-50, 53, 56, 59, 61-64, 67-69, 74-75, 78-79, 82, 85-86, 89-91, 95-96.  American Family's attorney-client privilege objection with respect to these documents is overruled.

American Family also claims the attorney-client privilege with respect to documents created by Jeff Bick, a Senior Staff Attorney at American Family.  It appears that Mr. Bick, in addition to being an attorney, was the sole claims adjuster for the Hamilton Action.  To the extent Mr. Bick was consulted by American Family to provide legal services outside the defense of the Hamilton Action (as to coverage determinations, for example), those communications may be protected by American Family's attorney-client privilege with its attorney.  However, the mere fact that Mr. Bick may have a law degree does not render all of his communications privileged.  *See Pippeneger v. Gruppe*, 883 F. Supp. 1201, 1203 (S.D. Ind. 1994) ("The existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege. The privilege protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.") (internal quotation marks and citations omitted); *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 725 (Ind. Ct. App. 1995) ("Of course, not every communication between an attorney and a client is a 'confidential

communication' and entitled to a reasonable expectation of confidentiality."). Where, as here, an attorney is performing the non-attorney role of claims adjuster, his communications are not privileged. *Kleinrichert v. American Fam. Ins. Group*, No. 1:10-cv-13-JMS-TAB, 2011 WL 470614, at *3 (S.D. Ind. Feb. 3, 2011) ("The attorney-client privilege does not apply to the extent an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor rather than as a legal adviser.") (citations omitted).

Upon review of the documents at issue, it does not appear that Bick was "provid[ing] opinions as to the interpretation and construction of insurance policy provisions" in the Hamilton Action as argued by American Family [*see* Dkt. 36 at 13]. For example, Document 18 on American Family's Second Amended Privilege Log is described as "Log notes containing mental impressions, opinions and conclusions by representatives of American Family and attorney J Bick at American Family re liability and insurance coverage issues." That document, reviewed by the Court *in camera*, does not contain any coverage issue opinions and does not appear to have been generated for the purpose of seeking legal opinions. The same is true for documents 31, 37-39, 45-46, 51-52, 54-55, 57-58, 65, 68, 70-73,76-77, 80-81, 83-84, 84, 87-88, 92-94, 97-98. American Family's attorney-client privilege objection with respect to these documents is overruled.

Although Document 21 is a Memo from Bick to another attorney at American Family, Michael Aspy, Document 21 was not sent for the purpose of obtaining legal advice. *See Penn Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 515 (Ind. Ct. App. 1999) ("The privilege applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities."). The letter specifies that Bick was instructed to "split this claim and assign this case to [Aspy] for review of the coverage issues

13

under the commercial policy."  Nowhere in the letter does Bick seek Aspy's legal opinion or legal advice, and nowhere does Bick indicate an expected response from Aspy offering a legal opinion or advice.  Document 21 is a transmittal letter to further the business function of American Family, and not a communication for the purposes of obtaining professional legal advice and, thus, it is not a communication protected by the attorney-client privilege.  The Court overrules American Family's attorney-client privilege objection to the production of Document 21 as well.

### C.       Work Product Doctrine

American Family also seeks to prevent the disclosure of many of its documents on the basis of the work product doctrine.  The work product doctrine provides qualified immunity for materials prepared in anticipation of litigation by a party, an attorney, or other representative of the party.  The work product doctrine is a product of the Supreme Court decision *Hickman v. Taylor*, 329 U.S. 495 (1947) that was later codified in Federal Rule of Civil Procedure 26.  That rule provides:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

14

Fed. R. Civ. P. 26(b)(3).  The documents American Family seeks to withhold from production were created during and for the purposes of the Hamilton Action.  The Court has no doubt that those documents would have been subject to the work product doctrine and protected from disclosure to the plaintiff in the Hamilton Action.  However, here, American Family seeks to use the work product doctrine to prevent the disclosure of these documents to its insured, Key – the party for whom those documents were originally created.[4]

The purpose of the work product rule is "to benefit the adversary system itself and to produce an atmosphere in which counsel for both sides can fully prepare and present their clients' best case without the stifling self-editing that would be necessary if an attorney's work product were subject to unchecked discovery."  *In re ANR Advance Transportation Co.*, 302 B.R. 607, 616 (E.D. Wisc. 2003).  "Thus, challenges to claims of work product immunity should be evaluated with the understanding that the purpose of the immunity is to protect the adversary system.  When work product immunity does not serve such purpose, there should be no immunity despite what may best serve individual interests."  *Id.* at 616-17.

To this end, in the legal malpractice context, several cases hold that the client has a right to work product documents.  *See, e.g., Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982) (holding that the former client was entitled to "all portions of [his attorney's] file relevant to the proceedings in the district court"); *Reiff v. Much Shelist Freed Denenberg, Ament & Rubenstein, P.C.*, No. 03-c-1939, 2003 WL 22424725, at *3 (N.D. Ill. Oct. 23, 2003) (holding that the attorney's internal information sheet and internal memorandum to his management committee

---

[4] Although it is not Key himself that seeks the documents in this litigation, a successor-in-interest, such as a bankruptcy trustee, has the right to the debtor's work product. *In re ANR Advance Transportation Co.*, 302 B.R. at 617; *Foster v. Hill*, 188 F.3d 1259, 1272 (10th Cir. 1999) (holding that the work product doctrine did "not entitle an attorney to withhold from a client's trustee in bankruptcy work-product prepared for the client's pre-petition lawsuits, so long as the trustee and the client are not adverse in those suits."). "[T]o deny the trustee access to work product would be to weaken the law firms' accountability to their own client." *In re ANR Advance Transportation Co.*, 302 B.R. at 617.

regarding an unpaid bill were not protected from disclosure because "[t]he work-product privilege would not apply to documents that [the client] now seeks that were prepared by his attorney on his behalf in the previous case").

None of the documents that American Family seeks to withhold were created in anticipation of litigation by Key (or his successor-in-interest) against American Family. According to American Family, no conflict existed between American Family and Key in the Hamilton Action.  [Dkt. 40 at 4 ("Since all parties had a shared interest in defeating Hamilton's claim and securing a defense verdict, there was no conflict in this relationship and the attorneys had an attorney-client relationship with both the insureds and the insurer.").]  American Family's characterization of the parties having a "shared interest" makes a work product protection between those parties less of a viable possibility.  Federal cases find that the work product doctrine is abrogated by a common interest.  *See Abbott Labs.*, 200 F.R.D. at 410 (summarizing that "the common interest doctrine abrogated *opinion* work product protection between an insurer and insured 'with respect to documents prepared solely for the underlying litigation.'") (citing *LaSalle Nat'l Trust, N.A. v. Schaffner*, No. 91-c-8247, 1993 WL 105422, at *6-7 (N.D. Ill. Apr. 6, 1993)).

The documents that American Family seeks to withhold from production are part of American Family's "claim file."  These documents relate to American Family's handling of the Hamilton Action, which goes to the very heart of the issue in this case – whether American Family breached any obligations to Key in its handling of the Hamilton Action.  Courts have specifically considered the issue of the work product doctrine in bad faith claims against insurance companies.  For example, the Seventh Circuit has held:

> [W]e recognize that allowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action. *See Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 576-78 (9th Cir. 1992). "In a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents considering the handling of the claim are directly at issue,'" and thus it is clear that "[u]nless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim." *Id.* at 577 (quoting *Reavis v. Metropolitan Prop. & Liab. Ins. Co.*, 117 F.R.D. 160, 164 (S.D. Cal. 1987)).

*Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996); *see also Camacho*, 2012 WL 6062029, at *5 ("[P]laintiff's need for the information in the insurance company's claim file in a third party bad faith claim such as this one is substantial because the documents in the file are often the only reliable indication of whether the insurance company acted in bad faith.").

Because the documents for which American Family seeks work product protection were created for Key's purpose and in the defense of Key in the Hamilton Action, American Family cannot withhold those documents from production. Indeed, the allegedly protected documents include those sent to Key (*see, e.g.*, Documents 1, 5, 15, 20, 29, 32, 62), a letter from Key himself (Document 26), and Key's own statement provided to American Family (Document 66). These documents are not protected from production by the work-product doctrine.

Even if these documents were subject to the work product doctrine, American Family seeks to thwart all efforts by the Estate to obtain the equivalent of this information. American Family argues that:

> Plaintiff has requested the deposition of Jeff Bick, and possibly other current and former representatives of the Defendant. Each of these witnesses were employed by Defendant during the handling of this claim. Therefore, the mental impressions, conclusions and opinions of each of these witnesses are privileged from discovery by Rule 26. *Simon Property Group, I.P. v. mySimon, Inc.*, 194 F.R.D. 644 (S.D. Ind. 2000); *Burr v. United Farm Bureau Mutual Insurance Company*, 560 N.E.2d 1250 (Ind. App. 1990); and *American Building Co. v. Kokomo Grain Co., Inc.*, 506 N.E.2d 56 (Ind. App. 1987).

[Dkt. 36 at 18-19.]  No one but American Family can show how it evaluated and defended the Hamilton Action.  Without access to this information, no other avenue exists for the Estate to discover this information.  As the court in *Tackett v. State Farm Fire and Casualty* held, where plaintiff alleges bad faith and the insurer takes the position that the claim was handled without bad faith, "the trial is the file."  558 A.2d 1098, 1103 (Del. Sup. Ct. 1988).  The *Tackett* court ordered production of the claims file, notwithstanding that it contained work product materials. *Id.*; see also 17A *Couch on Insurance* § 251:27 (3d ed. 2007) ("[I]t has been said that the nature of the issues in a bad faith insurance action automatically establishes the substantial need element for discovery of certain materials in the insurer's claims file, which is one of the factors to be considered in determining whether the claims file is exempt from discovery under the work product rule.").  American Family cannot stonewall the Estate's discovery efforts through the work product doctrine when the entirety of the case relates to **how** American Family handled the Hamilton Action.

American Family argues that is had a reasonable basis to dispute liability based on the facts that it submitted to the Court and argues that the Estate must show more than a "naked claim of bad faith" before it engages in a "fishing expedition into privileged communications." [Dkt. 36 at 4-7, 21 (citing *Logan*, 96 F.3d at 977); Dkt. 40 at 8-10.]  American Family argues that it informed Key that if the damage award exceeded the policy limit, American Family would not pay the excess and that Hamilton refused to move off the policy limits at mediation.  However, these cherry-picked facts do not provide an answer to the "why" questions that the Estate is entitled to investigate during discovery.  **Why** did American Family choose not to settle for the policy limit at mediation?  **Why** did American Family believe that "the majority of the fault would be placed between Owens and Hamilton" in a "question of first impression in Indiana"

18

such that it was willing to go to trial and risk personal exposure to Key instead of settle for the policy limit?  These are questions that American Family's facts do not answer and on which the Estate is entitled to conduct discovery.

The Seventh Circuit in *Logan* opined that "[t]he plaintiff must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith.  Of course, this required showing is not a high hurdle because the plaintiff, without seeing the documents, can only speculate as to their likely contents.  He need only show the possibility, not the certainty, that the claim documents contain evidence of bad faith."  *Logan*, 96 F.3d at 977.  In *Logan*, the district court conducted an *in camera* review of each document and "concluded that the documents contained no possible evidence of bad faith whatsoever, stating that 'even if totally disclosed, not a single one of these documents would support an argument of bad faith.'" *Id.*  As a result, Logan could not show substantial need to overcome the work product protection.

The same is not true here.  The Court has conducted an *in camera* review of the documents that American Family claims are work product.  For example, in Document 63, Threlkeld's invoice to American Family, Threlkeld indicates that on January 8, 2010 he had a communication with Bick and that Bick "understands court of appeals may have to resolve the issue."  At best, Threlkeld's notation shows an understanding that the area of law at issue in the Hamilton Action was unsettled.  At worst, Threlkeld's notation indicates an expectation that Key may lose either summary judgment and/or trial in the Hamilton Action and be relegated to appeal of an adverse verdict.[5]   Certainly, the Estate is entitled to consider this communication and

---

[5] The Court notes that this is what actually came to pass and that Key was forced into bankruptcy during the pendency of the appeal.  American Family failed to post a bond for the entire amount of the verdict to stay execution of the entire judgment pending appeal.  On October 8, 2010, Threlkeld advised Key that he "must post security in an amount to be determined by the Court that protects the adverse party in the event the appeal fails." [Letter from Threlkeld to Key with a copy to Bick produced *in camera*.]  At the same time, Threlkeld corresponded with American Family stating:  "I am sure that American Family is not going to request a bond to cover the entire judgment."  [October 8, 2010 letter from Threlkeld to Bick produced *in* camera.]  Within twenty days, Key filed for

examine Bick and Threlkeld regarding their handling of the Hamilton Action.  The Court cannot

say that a review of American Family's allegedly privileged documents shows "no possible

evidence of bad faith whatsoever."   The Court overrules American Family's work product

objections.

### D.  Reserves Information

American Family also seeks to withhold from production documents related to its

reserves determination for the Hamilton Action.[6]   These reserve documents would not be

protected from disclosure by the attorney-client privilege, and as stated above, cannot be

withheld from Key on the basis of the work-product doctrine.  The first question with respect to

reserve information is whether such information is relevant and thus discoverable.  The Court

finds that reserve-related documentation is relevant to the Estate's claim.  This information goes

to American Family's treatment of the Hamilton Action and how it was processed, handled, and

analyzed.   Courts have found reserve information relevant in a bad faith case on the issue of

whether there is a "potential for liability."   "Thus when an insurer, by its actions, acknowledges

the potential for liability and fails to attempt to settle a claim against its insured and/or fails to

defend, reserve information is relevant to the issue of good faith."   *American Protection Ins. Co.

v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 450 (E.D. Cal. 1991) (distinguishing the relevancy

---

bankruptcy.   [October 28, 2010 letter from Threlkeld to Bick produced *in camera*.]   If a jury were to find that American Family had reason to anticipate an adverse verdict at the trial court, even if believing its interpretation of the unsettled law in the area might ultimately be vindicated, then that same jury could find that American Family's decision to subject Key to that anticipated adverse verdict with no intention to protect Key from the effects of that verdict during the pendency of the appeal, could itself constitute bad faith.

[6] American Family argues that "evidence or remarks about liability insurance in a negligence case is inadmissible" and thus "the amount of insurance reserves available would not be admissible evidence at trial." [Dkt. 36 at 19.]   American Family's arguments miss the mark.  This case is entirely about the liability insurance and the insurer's handling of the claim.   The evidentiary rules that prevent the introduction of evidence of insurance **covering the claim at issue** are wholly irrelevant to a bad faith claim against the insurer.  Federal Rule of Evidence 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully.  But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."

of reserves in a bad faith settlement claim versus a claim regarding the insurance company's decision denying coverage in which reserves would not be relevant); *see also United States Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 644 (D. Kan. 2007) (confirming the Magistrate Judge's finding that "loss reserve information may lead to the discovery of admissible evidence").

In considering Allstate Property & Casualty Insurance Company's objection to producing its reserves information in a denial of insurance coverage claim, this Court held:

> The court understands that insurers are reluctant to share reserve information because reserves generally reflect only precautionary estimates used for business-risk purposes and not an insurer's opinion about the merits of a claim. But the court has no basis for finding the information wholly irrelevant or for finding that the burden of revealing the information in the [claim file] outweighs any potential relevance. *See, e.g., Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1190-92 (Colo. 2002) (discussion of cases from other jurisdictions on discoverability of loss reserve information in both the first-party and third-party insurance context). This is not to say that the reserve information is admissible.

*Compton*, 278 F.R.D. at 198. The same is true here.

American Family seeks to withhold Documents 33 and 60 because they contain allegedly "privileged reserve information." American Family does not explain the privilege that would apply to prevent the disclosure of "reserve information." The Seventh Circuit has repeatedly held that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir, 2006)); *see also J.A.D. ex rel. Depp v. Astrue*, No. 1:11-cv-01518-TWP-TAB, 2013 WL 1183146 at *6 (S.D. Ind. Mar. 21, 2013) (citing *Poston v. Astrue,* No, 1:08-cv1543-JMS-LJM, 2010 WL 987734, at *8 (S.D. Ind. Mar. 15, 2010) ("This method of argumentation is not argumentation at all . . . . The Court cannot and will not forge new arguments for [the Claimant].");  *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (finding that undeveloped and perfunctory arguments are waived)).

Consequently, based on the prevailing case law, the Court overrules American Family's objections to producing Document 33 and 60 and orders them to be produced.

## III.    Conclusion

For the foregoing reasons, the Court overrules American Family's objections to producing Documents 1-98 on its privilege log.  Documents 1-98 shall be produced within fourteen (14) days of the date of this Order.  Should American Family seek a confidentiality agreement or protective order regarding the use of these documents outside the litigation, American Family shall meet and confer with Plaintiff and file a motion and a proposed order prior to the date for the Court-ordered production of the aforementioned documents.


        SO ORDERED.


Dated: 04/22/2013


                                                        Mark J. Dinsmore
                                                        United States Magistrate Judge
Distribution:                                           Southern District of Indiana

Mark K. Dudley
HOWARD DELEY & DUDLEY
markdudley@hddlawyers.com

Robert Scott O'Dell
O'DELL & ASSOCIATES, P.C.
rodell@odell-lawfirm.com